### ALFRED AUTREY PALMER V. THE STATE.

No. 19448.    Delivered March 9, 1938.
Rehearing denied April 20, 1938.

The opinion states the case.

*Currie McCutcheon,* of Dallas, for appellant.

*Will R. Parker,* Criminal District Attorney, and *Leo Brewster* and *H. C. Wade,* Assistants Criminal District Attorneys, all of Fort Worth, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

GRAVES, JUDGE.—The appellant was charged by indictment with ravishing a woman in Tarrant County, and upon a trial thereof he was acquitted of the crime of rape and convicted of aggravated assault, and awarded a penalty of a fine of $1,000.00 and two years in the county jail.

The trial was vigorously contested, and appellant brings before us many bills of exception, the major portion of which we shall notice.

Appellant's bill of exceptions No. 1 complains of the arrangement of the courtroom in which his trial was had, and the fact that the witness box was built in such a way that the appellant was unable to see the entire body of the witness at the time he was on such stand, and therefore he was not confronted with the witnesses against him. From the description of the witness chair and stand, it might be inferred that it was rather inconveniently situated, yet we think that when a witness is seated therein he would be in view of and confronting the appellant from an angle that the appellant might occupy in the room, and under the following qualification of the judge to the bill, it would seem to us that the appellant's rights were fully protected: "The defendant's motion is granted insofar as each witness who testifies will be required to come into the courtroom and testify from the regular place provided for witnesses in the witness chair, and the defendant and his attorney will be permitted to shift their seats anywhere within the rail where they can get a better view of the witness box while testifying, if they so desire; otherwise the motion is overruled."

Appellant complains in his bill of exception No. 2 relative to the failure of the court to place A. D. Robinson upon trial first. It will also be noted that Mr. Robinson desired to place the appellant upon trial first, and at the time this motion was acted upon on November 4, 1936, it seems that Mr. Robinson's attorneys were not in position to go to trial at that time, and the placing of him upon trial first at that time would necessarily have resulted in forcing a continuance of both causes.

Article 651, C. C. P., says, among other things: "Such affidavit shall not, without other sufficient cause, operate as a continuance to either party."

Again, we quote Article 652, C. C. P.: "If a severance is granted, the defendants may agree upon the order in which they are to be tried, but if they fail to agree, the court shall direct the order of the trial."

It seems that after the hung jury in November, 1936, that the appellant's motion that Mr. Robinson be placed on trial first was not renewed in January, 1937, at the time when this cause

went to trial and resulted in the verdict herein complained of. We can see no error in the court's action therein.

Appellant's bill of exceptions No. 3 complains that while the witness Mrs. Jesse Fry was on the stand the State's attorney asked her: "Q. What else did she say after telling you that she didn't know that men could treat her like that?" It seems that the objection was to such question for using the word men instead of man. The witness herself said she did not remember whether the injured party said men or man. In either event we can see no error reflected by the proceedings set forth in this bill.

Bill of exceptions No. 4, if the same contained error, which we do not assert, such was cured by the instructions of the court to disregard same.

Bill of exceptions No. 5 complains of testimony showing that the appellant had been indicted in two cases for swindling under fifty dollars, and a remark upon the part of the assistant district attorney as follows: "A. That was just an honest mistake, Mr. Wade? Q. Not asking whether honest or not. Fact, I don't think it was," the burden of this complaint being to the last sentence just above quoted. If there was any error in such statement, to which we do not agree, same was cured by the court immediately instructing the jury to disregard such statement. In the recent case of Jackson v. State, 42 S. W. (2d) 433, we laid down the general doctrine that a remark of like character would not be error calculated to cause a reversal of the cause, especially where appellant's version of the transaction was not calculated to impress a reasonable mind with the view that he was telling the truth. It seems to us in this case that a reasonable mind might say that the appellant was attempting to evade the State's attorney at such time and his testimony was not calculated to convince one that his trouble about swindling matters was just an honest mistake. We notice that the appellant's testimony herein is oftentimes at variance with his former testimony given at the first trial of the case, which was introduced in its entirety by the appellant's attorney. What we have said relative to bill of exceptions No. 5 will also apply to bill of exceptions No. 6.

Bill of exceptions No. 7 complains of the State's attorney asking the appellant the following question: "Truth of it is you just don't want this jury to know what kind of a fellow you are?" Appellant's attorney immediately objected to such question, and the objection was by the court sustained. The question was answered by the appellant, and the court instructed the jury not to consider the same. We think the court's in-

struction was proper, and would cure any error, if such there was, in the asking of such question.

Appellant's bill of exceptions No. 8 complains of the witness Mrs. Anna Belle Harby being allowed to testify as to what the injured party said at the time she arrived at the home of Mrs. Harby, having been brought there by Mrs. Fry who picked her up on the road near where she claimed to have been assaulted and brought her to her home.

Unquestionably this statement made to Mrs. Harby occurred immediately upon being taken to her home, and at such time Mrs. Harby said that the injured party was crying and moaning and placing her hand on her head and on her abdomen, and that she was hysterical and walking all stooped over. Witness said that the injured party's lips were cut and bleeding; her face and head were swollen, that she had a big knot on her head, and that her right eye was swollen, that she was taking on terribly and appeared to be suffering pain, that this was about nine o'clock, and necessarily but a short time after the offense had been committed, or at least after she had left the company of the appellant. The witness was allowed to testify, over appellant's objection, that prosecutrix told her: "I'm ruined, they both used me." Witness said this is the first thing the injured party said after she came in the house, which was before nine o'clock. She was bleeding from the various wounds on her face and head and in a hysterical condition, suffering and moaning, her attitude evidencing pain. It seems to us that this was a res gestae statement of the transaction itself, and within such a short period of time, that it came spontaneously without premeditation on the part of the injured party. The witness Mrs. Fry also said, upon her memory being refreshed, that the injured party said: "Oh, my glasses and my money, and the money was my boss' money." We see no error in the admission of this testimony.

Appellant's bill of exceptions No. 9 complains of the cross-examination by the State's attorney of the appellant's wife, whom appellant had married since the transaction herein complained of, and of his asking her many questions, which seem to us to be immaterial questions, the major portion of which the witness failed to answer or answered in an evasive manner. It seems to us that the only testimony that could have damaged appellant's cause in any way is reflected in the following manner:

"Q. You were going with him along the first of August, wasn't you? A. Yes.

"Q. And he was married to another woman at that time, wasn't he? A. His divorce was pending.

"Q. Well, he was still married to her, wasn't he? A. Yes."

In our opinion this bill is multifarious and presents many matters in one bill, but we also note that the court immediately, after the matters above quoted were testified to, instructed the jury to disregard all of the testimony of the witness Flossie Chisum Palmer, which was objected to by the appellant, and that the same was ordered stricken out and the jury was then and there instructed not to consider the same for any purpose in this case. In connection with this bill we also note that the appellant's attorney introduced the question and answer form of the appellant's testimony on the trial begun on November 4, 1936, and in that testimony thus introduced by the appellant we find that the appellant himself testified to practically everything that was brought out by the State's attorney from his wife Flossie Chisum Palmer, and that the testimony to which he thus objected on cross-examination of his wife was offered by him from other sources.

We are not willing to say that the admission of such testimony was such a serious error that it could not be corrected by the instructions of the court, especially in view of the fact that appellant himself offered testimony of like character.

There is no question in our minds but what the complaining witness was badly used by some one, that she had been brutally beaten, according to her own testimony, and her body outraged; that the appellant was one of the causes of her being beaten and mistreated has been decided by the jury, and we see no reasonable ground for saying that any serious error was committed in the trial of this cause.

The judgment will therefore be affirmed.

### ON APPELLANT'S MOTION FOR REHEARING.

CHRISTIAN, JUDGE.—Our re-examination of the record in the light of appellant's motion for rehearing leads us to the conclusion that reversible error is not presented.

Appellant's motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.